HAMILTON, J.
This action was brought in the municipal court by John N. Quinn, doing business as Quinn & Co. against the Talge Mahogany Co., defendant below, to recover the price of what is known as a “Dutch oven” which had been installed in the factory of the defendant at Indianapolis.
As disclosed by the evidence, a “Dutch oven” is an attachment to a furnace under a steam boiler for the purpose of lessening the amount of fuel required, and to increase the steaming capacity of the boiler.
The ease was tried to a court and jury and resulted in a verdict in favor of the plaintiff for the amount claimed. A motion for a new trial was overruled, and judgment was rendered upon the verdict.
The Talge Mahogany Co. thereupon prosecuted error to the court of common pleas, where the judgment of the municipal court was affirmed. Thereupon this proceeding was brought by *538 ■the Talge Mahogany Co. to reverse the judgment of the court of common pleas and of the municipal court of Cincinnati, and for a new trial.
Plaintiff in error urges three points of error upon which it bases grounds for reversal: first, that the verdict is against the weight of the evidence and contrary to law; second, that the court erred in excluding evidence concerning an express warranty — holding that an express warranty can not exist at the same time as an implied warranty; and, third, that the court erred in its charge to the jury.
Plaintiff below declared upon a written contract or order as set forth in exhibit “A” in the record, which is in the form of a written proposition from Quinn & Co. for the furnishing of the equipment at a specified price of $482 delivered f. o. b. Cincinnati, and in which they agree to furnish a man to install the furnaces, the Talge Mahogany Co. to pay him $5 a day and expenses. ■ This proposition was accepted by the Talge Mahogany Co., and is as of date September 17, 1912.
The defendant by its answer admits that the plaintiff’s claim was for the goods, merchandise and services as itemized in plaintiff’s bill of particulars, but denies every other fact claimed, and by way of counterclaim sets up certain representations and statements which it claims constituted guaranties and warranties to the effect that the installation of the “Dutch ovens” would effect a great economy of fuel used under said boilers and would add greatly to the capacity and efficiency of the boilers in said plant, and that said Talge Mahogany Co. relying upon such statements, representations, guaranties and warranties so made by the said plaintiff, which they believed to be true, gave the order for the ovens as above stated. The defendant further in its counterclaim stated that said “Dutch ovens” failed in every respect to do the things claimed for them, but instead of effecting a saving in the amount of fuel required, it was necessary and the defendants did use — until the furnace equipments were removed by them — a large quantity of coal and fuel in excess of that required prior to the installation of the furnaces and ‘ equipment, and that they were put to great trouble and expense on account thereof, for which they ask damages in the sum of $875.26; that after making every possible effort to use *539 said furnaces in its plant with, economy and efficiency the said defendant was compelled to and did cause same to be removed; and that they lost much time and were compelled to expend a large sum of money .on account thereof.
Plaintiff in error contends that the court erred in refusing to permit the defendant below to introduce evidence tending to prove an express warranty, and restricting it to the proof of an implied warranty.
On page 29 of the record, the court says:
“The court will not permit the introduction of evidence tending to prove an express warranty, but it will admit evidence tending to prove an implied warranty,” etc.
And, further, the court charged the jury that the inquiry should be limited to the question of whether or' not there was an implied warranty in the ease.
In this ruling on the introduction of evidence, and in its charge to the jury, the court was in error. Section 8392 G. C., is as follows:
“Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller’s opinion only shall be construed as a warranty.”
It is urged by defendant in error that this section does not apply in this ease as it would contravene the rule that oral evidence can not be admitted to vary the terms of a written contract.
The language of the statutes is clear and unambiguous. The section defines what shall constitute an express warranty and nowhere limits its application to any special class of contracts. We are therefore of the opinion that Sec. 8392 applies to the ease at bar and the defendant was entitled to put in evidence of an express contract, and to have the consideration of the jury on that question.
Section 8395 G. C., sub-section (6) provides:
*540 “An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith. ’ ’
Evidence offered by the defendant which in effect tended to show an express warranty was admitted, but was restricted by the court in its application to the purpose of deciding whether or not there was an implied warranty of fitness under all the circumstances of the case. This evidence may have clearly shown an express warranty and being admissible under the statute as above stated should have been admitted for that purpose also, as an express and an implied warranty are not inconsistent in this case.
We are further of the opinion that the verdict and judgment were manifestly against the weight of the evidence. Mr. Talge, president of the defendant company, testified that Mr. Quinn twice before the “Dutch oven” was installed came and examined his‘plant: that he stated to Talge and represented to him that the company was burning entirely too much fuel and that with the oven installed it would save twenty to thirty per cent of the fuel and the boilers would then have sufficient capacity to carry the load required and it would be unnecessary to install another boilei', which had been contemplated by the company, and that the capacity of the boilers would be largely increased. These statements and representations were denied by Mr. Quinn, who was unsupported by any other witnesses. Mr. Talge was supported in his testimony by three witnesses — the engineer, the fireman and the stenographer — who were at that time in the employ of the Talge company, but who had some time prior to the trial in the municipal court severed their connections therewith and had no interest in the matter so far as the record shows.
Mr. Talge testified that all these statements and representations and affirmations of fact were made to him prior to the ordering of the ovens and induced him to purchase the goods, and that he purchased the goods, relying upon these affirmations, statements and representations.
It appears further from the evidence that the defendant made every’ effort to use the ovens which had been installed by the man sent by the Quinn Co., and after ten days ’ trial notified Mr. Quinn that the ovens had been a disappointment and had *541 failed to do the work as represented. Mr. Quinn some time later, after the receipt of this letter, visited the plant, and after looking it over, attributed the failure of the ovens to an opening in a brick wall between the boilers which he claimed interfered with the drafts and further suggested the raising of the stack of the boilers some twenty feet to give the furnaces more draft. The Talge Co. was not bound to make these changes, as the conditions were just as they were when Mr. Quinn first visited the plant at Indianapolis and after examination made the representations with reference to the working of the ovens.
These are the salient'points in the evidence as shown by the record, and as we view it this evidence did not warrant the verdict and judgment rendered in the municipal court.
For the errors above stated the judgment of the common pleas court and of the municipal court will be reversed and the cause remanded for a new trial.
Jones and Wilson, JJ., concur.